Filed 4/11/25  Brown v. County of Santa Clara CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| MONA BROWN,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>COUNTY OF SANTA CLARA,<br><br>        Defendant and Respondent. | H051702<br>(Santa Clara County<br>Super. Ct. No. 20CV367465) |

Appellant Mona Brown sued her employer, the County of Santa Clara (the County), alleging among other claims that the County discriminated against her on the basis of disability, denied her reasonable accommodation, and failed to engage in an interactive process regarding the requested accommodation.  The trial court granted summary adjudication in favor of the County on those claims after deciding the evidence demonstrated as a matter of law that the County reasonably accommodated Brown's medical conditions and, consequently, Brown could not maintain a viable claim for disability discrimination.

Brown appeals from the judgment in favor of the County.  For the reasons explained below, we decide that she has not established reversible error as to the summary adjudication rulings and affirm the judgment.

# I. FACTS AND PROCEDURAL BACKGROUND[1]

*A. Brown's Employment with the County*

Brown began working for the County in 1996. In 2011, she moved to in-home supportive services (IHSS) where she worked as a program service aide until her retirement in 2022.

The County's IHSS program provides eligible residents with in-home supportive services such as paramedical services, personal care services, transportation to medical appointments, and housekeeping. Brown worked in IHSS's "[a]pplications [r]eadiness" unit, providing administrative support to applicants seeking to obtain IHSS services. Brown's manager in the applications readiness unit, Inessa Christy, distributed referrals for IHSS as equally as possible among the six program service aides who worked in the unit. The program service aides were responsible for collecting and verifying the referral applicant's demographic information and health certification attesting to the need for in-home supportive services.

Christy, the eligibility work supervisor, managed the applications readiness unit at all relevant times, except for a period from October 2017 to October 2018. Christy reported to Kingston Lum, a social services program manager I. Rebecca Flores was the County's reasonable accommodation officer who worked on Brown's accommodation requests. In April 2021, Monica Carrillo replaced Flores as the reasonable accommodation officer assigned to Brown's case file.

---

[1] We draw the facts recited here from the record that was before the trial court when it ruled on the motion for summary judgment (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037 (*Yanowitz*)), including the parties' separate statements of undisputed material facts, evidence judicially noticed in conjunction with the motion for summary judgment, and admissions in the parties' appellate briefs. (See *Kim v. County of Monterey* (2019) 43 Cal.App.5th 312, 316, fn. 1.) We liberally construe the evidence in support of Brown, as the party opposing summary judgment, and resolve doubts concerning the evidence in her favor. (*Yanowitz*, at p. 1037.)

Beginning in June 2018, IHSS's leadership observed that a significant backlog of pending applications for in-home support services had accrued and suggested initiating the use of progressive discipline for program service aides who failed to address their individual backlogs. By 2020, IHSS was under increased pressure from the County's board of supervisors and other elected officials to address the backlog, leading to the implementation in April 2021 of a 24-hour call back rule. The rule required program service aides to follow a specific timeline when responding to their assigned referrals.

*B. Accommodations for Brown's Disability*

In January 2016, Brown suffered a workplace injury when she slipped and fell in the parking lot while returning from lunch. Brown injured "her '[r]ight knee, left knee, right elbow, right wrist, and neck.' " Brown filed for and received workers' compensation benefits for the injury. About four and one-half months later, she took paid leave in connection with her injuries. Brown was on paid leave from May 2016 through May 2017, when her paid leave was converted to unpaid leave.

In December 2017, Brown asked to return to work on a reduced hours schedule. The County was able to accommodate her request through its workers' compensation temporary modified return to work program. In January 2018, Brown returned to work for 12 hours per week (four hours per day, three days per week), which increased in February 2018 to 16 and one-half hours per week (five and one-half hours per day, three days per week). In May 2018, Brown returned to her position full time.

In December 2018, Brown again took paid leave because her " 'right knee blew up.' " Brown returned to work with accommodations in mid-April 2019, working 19 and one-half hours per week (six and one-half hours per day, three days per week). After approximately one month, in mid-May 2019, Brown went on leave for carpal tunnel release surgery. The work and disability status notes (hereafter "doctor's notes")

3

submitted in support of Brown's leave requests from May 2019 through November 2020 indicated that she was temporarily but totally disabled.[2]

On October 28, 2020, Brown requested by e-mail to return to work the next month on a reduced schedule and to allow time to ensure that her ergonomic workstation from a prior office[3] would be in place (October 2020 e-mail). The accommodation Brown requested was to gradually increase her work hours according to the following schedule: 12 hours the first week, 15 hours the second week, and 18 hours the third week. Brown would be reevaluated by her doctor after the third week. The goal was that she would be able to return to a full-time work schedule after two months. The doctor's note submitted to the County and dated October 23, 2020 (October 2020 doctor's note) stated that if the requested restrictions could not be accommodated, Brown "should be considered medically temporarily totally disabled."

On November 2, 2020, reasonable accommodation officer Flores spoke with Brown by telephone. Flores informed her that the County could not accommodate the proposed request that Brown begin working 12 hours per week but could accommodate a part-time schedule of 20 hours per week. Brown disputes certain details of the call. She maintains that she called Flores about the ergonomic chair that had been at her workstation prior to the office move, and which a coworker had informed her was not in

---

[2] Brown objected to statements in reasonable accommodation officer Carrillo's declaration, submitted in support of the motion for summary judgment, summarizing and authenticating the doctor's notes submitted by Brown's treating doctor during the period at issue. Brown objected on the grounds of lack of foundation and personal knowledge, because Carrillo was "not assigned to work with Ms. Brown until April 2021," and most of the doctor's notes predated her assignment. The trial court did not rule on the objection, which we address in our discussion, *post* (pt. II.C., fn. 10).

[3] Sometime during Brown's unpaid leave following her carpal tunnel surgery, the applications readiness unit moved office locations to Julian Street. Brown later discovered that the chair she had used previously was not installed in her office at the new location, even though she had labelled it for purposes of the move. The County maintains that it looked for and was unable to find the chair.

the new cubicle.  Before she could raise the subject of the chair, Brown states that Flores suggested that Brown retire from the County because she " 'had been out for a long time.' "  According to Brown, she would have been able to return to work if the County had provided her the same chair she had previously and allowed her to start at 12 hours per week, gradually increasing to 18 and eventually 40 hours per week.  Flores testified in deposition that she did not suggest Brown retire but would have provided her standard information about the option of a disability retirement.

The parties entered a dialogue, which Brown described as "going back and forth every month" as the County continued to focus on the 20 hour per week minimum.  In December, Brown's supervisor Christy and Brown spoke about Brown's return to work and work hours.  According to Brown, Christy did not address other limitations stated in her accommodation request, such as restrictions on repetitive stooping and bending and limits on gripping and grasping.  Brown submitted doctor's notes in early December 2020 and early February 2021 requesting the same accommodation (reduced hours starting at 12 hours per week or indicating temporary but total disability).  However, one doctor's note in late December stated that Brown was temporarily but totally disabled and did not propose any work accommodation option.  On February 10, 2021, Christy spoke to Brown to discuss the limitations on her work schedule and other restrictions in the doctor's note related to gripping, grasping, and fine manipulation.

On February 24, 2021, Brown submitted a doctor's note that authorized her temporarily to work either 30 hours per week from home (6 hours per day, 5 days per week) or 12 hours per week in the office (4 hours per day, 3 days per week).[4]  Lum and Flores followed up with Brown to clarify the new restrictions, including whether Brown

---

[4] Brown describes the 12-hour per week starting accommodation option for in-office work set forth in the February 24, 2021 doctor's note as "increasing three hours per week thereafter."  However, the note itself, attached as an exhibit to the Carrillo declaration, does not refer to increasing the hours on a weekly basis (in contrast to the November 13 and December 8, 2020 doctor's notes submitted by Brown).

could work a hybrid schedule of one day in the office and the other days from home, and regarding the physical limitations on gripping, grasping, sitting, and standing.[5] Brown responded by e-mail dated February 25, 2021, addressed to Lum, stating that she would follow up with her doctor regarding the clarification on restrictions, including "Working from home 5 days a week, can it be a hybrid model of working 4 days a week at home . . ."? The next doctor's note, submitted in late March 2021, imposed the same restrictions on hours as the February 24 doctor's note but added a time limit to gripping/grasping and restated that "[i]f these restrictions can not [*sic*] be accommodated by the employer then she should be considered medically temporarily totally disabled." A doctor's note submitted in late April 2021 listed the same restrictions on hours and adjusted other limitations related to bending and stooping, stating "ok to occasional [*sic*] bend and stoop to pick up items." These notes did not address the hybrid schedule the County had proposed to Brown.

On April 30, 2021, Carrillo (who had replaced Flores) met with Brown over Microsoft Teams to discuss Brown's most recent doctor's note, the accommodations required for Brown to return to work, and the hybrid option proposed by the County. Brown agreed to the hybrid work schedule accommodation of 28 hours per week (consisting of four days at home for six hours per day, and one day in the office for four hours per day). On May 25, 2021, Brown returned to work based on the agreed upon part-time schedule.

*C. Brown's Employment Discrimination Action*

In June 2020, Brown and three coworkers[6] filed suit against the County and their manager Christy. In the operative second amended complaint (complaint), filed in March

---

[5] Brown disputes that Flores participated in the February 2021 conversation clarifying her accommodation request but does not dispute the substance of the discussion.

[6] Brown's coplaintiffs dismissed their claims against the County in December 2023. This appeal pertains only to Brown.

2022, Brown asserted seven causes of action. As to the County, Brown asserted claims under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.) for age, ancestry, and disability discrimination, denial of reasonable accommodation, and retaliation. Brown further asserted claims against both the County and Christy for harassment in violation of FEHA and intimidation in violation of FEHA and Civil Code section 51.7.

The County and Christy moved for summary judgment, or in the alternative, summary adjudication as to all seven causes of action (motion). Brown opposed the motion. After considering the parties' respective arguments and evidence, the trial court denied summary adjudication as to the first (age discrimination) and second (ancestry discrimination) causes of action and granted summary adjudication in favor of the County and Christy as to the third (harassment) and fifth (unlawful intimidation) causes of action, and in favor of the County as to the fourth (retaliation), sixth (disability discrimination), and seventh (denial of reasonable accommodation) causes of action. Brown dismissed her first and second causes of action without prejudice, and on February 15, 2024, the trial court entered judgment in favor of the County and Christy and against Brown.

On February 27, 2024, this court deemed Brown's appeal filed as of February 15, 2024, the date on which the trial court entered judgment. We summarize only those aspects of the motion, opposition, and ruling relevant to our analysis on appeal.[7]

---

[7] Brown challenges the trial court's grant of summary adjudication as to the sixth and seventh causes of action for disability discrimination and denial of reasonable accommodation. She does not challenge the court's ruling as it pertains to her the third, fourth, and fifth causes of action for harassment, unlawful intimidation, and retaliation. Thus, of the five causes of action that remained in the case following Brown's dismissal of her age and ancestry discrimination claims, only her claims for disability discrimination and denial of reasonable accommodation are at issue before this court. Because Brown does not challenge the trial court's summary adjudication as to any claims asserted against Christy, only the County and Brown are parties to this appeal.

7

*D. Motion for Summary Judgment and/or Summary Adjudication*

In its motion, the County asserted that the cause of action for failure to accommodate failed as a matter of law because the undisputed evidence established that (1) the County did accommodate Brown for "more than five years" after her 2016 injury, (2) Brown could not perform the essential functions of her job during the period she represented that she was totally disabled and the County accommodated her "by continuing her leave," (3) the 12-hour work week Brown proposed starting in November 2020 would have been unduly burdensome on the County, which was not required to grant the accommodation, and (4) the County engaged in an interactive process with Brown, allowing her to return to work with accommodations including a reduced schedule of 28 hours per week. The County maintained that, because of increasing pressure to reduce its backlog of open referrals and based on its prior experience accommodating Brown at 19.5 hours per week in April and May 2019, it believed the proposed 12-hour in the office starting accommodation would not allow Brown to perform the essential functions of her job and would cause hardship for the County. The County argued that Brown's cause of action for disability discrimination likewise failed in that it was based wholly on the County's alleged refusal to provide reasonable accommodation.

In support of the motion, the County included its memorandum of points and authorities, its separate statement of undisputed material facts (separate statement), the declarations of Lum, Carrillo, and Christy, and the declaration of the County's counsel Robin Wall. The Carrillo declaration described the County's reasonable accommodation program, discussed the history of Brown's leave from work and accommodation requests, and attached Brown's doctor's notes indicating her work and disability status starting in November 2020. The Christy declaration described the circumstances under which the IHSS applications readiness unit faced increased pressure from management and the board of supervisors to reduce the backlog and stay current with referrals for in-home

8

support services. Christy declared that the unit "had a business need for full-time work." Christy stated that Brown's prior accommodation of working part-time 19.5 hours per week in April 2019 had been "unsuccessful" from a "business perspective" because Brown had been unable to keep up with her assigned referrals, and Christy had "concerns" about the ability of the unit to accommodate less than full-time work at the time Brown proposed the 12-hour initial return to work accommodation in October 2020.

Brown opposed the motion, arguing that triable issues existed as to her reasonable accommodation and disability discrimination claims. Brown challenged as a misunderstanding of the law the County's contention that it had reasonably accommodated her by placing her on paid leave. Brown further asserted that evidence in the record supported an inference that discriminatory intent played a role in the County's initial refusal to accommodate Brown in November 2020 and that a reasonable jury might view "all the quibbling about work limitations" (i.e., the purported 12-hour work week) that took place between November 2020 and May 2021 "as pretextual."

In its final order after hearing on the motion, the trial court adopted its tentative ruling granting summary adjudication as to the sixth and seventh causes of action for disability discrimination and denial of reasonable accommodation in violation of FEHA. The court declined to rule on either side's evidentiary objections after concluding the objections were "not material to the outcome of the motion."

As to Brown's reasonable accommodation claim, the trial court found that the County accommodated Brown based on the April 2021 interactive meeting in which Carrillo proposed, and Brown accepted, the 28-hour work week accommodation with one day in the office. The court ruled this constituted "undisputed evidence that the County reasonably accommodated plaintiff Brown's disability" and that Brown had failed to refute that showing with supporting evidence. The court found that Brown had "no legal basis to maintain a viable claim for disability discrimination," which was based on

9

Brown's allegation that the County discriminated against her by failing to reasonably accommodate her disability.

## II. DISCUSSION

Brown contends the trial court erred in granting summary adjudication of her reasonable accommodation and disability discrimination causes of action because there are triable issues of fact concerning the breakdown of the interactive process, the County's refusal to reasonably accommodate her for six months between November 2020 and May 2021, and the County's discriminatory conduct in refusing her request for reasonable accommodation and placing her on unpaid leave.

*A. Principles of Summary Judgment and Standard of Review*

Whether the trial court erred in granting a defendant's motion for summary judgment is a question of law we review de novo. (*Samara v. Matar* (2018) 5 Cal.5th 322, 338.) Summary judgment is warranted where there are no triable issues of material fact, and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) When reviewing an appeal after a motion for summary judgment has been granted, "we conduct the same procedure employed by the trial court. We examine (1) the pleadings to determine the elements of the claim, (2) the motion to determine if it establishes facts justifying judgment in the moving party's favor, and (3) the opposition—assuming movant has met its initial burden—to 'decide whether the opposing party has demonstrated the existence of a triable, material fact issue.' " (*Oakland Raiders v. National Football League* (2005) 131 Cal.App.4th 621, 630 (*Oakland Raiders*).)

The County, as the party moving for summary judgment, bears the burden of persuasion "from commencement to conclusion" of the motion that there is no triable issue of material fact and that it is entitled to judgment as a matter of law. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).) To meet its persuasive burden, the party requesting summary judgment has an initial burden of demonstrating

10

that a cause of action lacks merit because one or more elements of the cause of action cannot be established or there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subd. (*o*); *Aguilar*, at p. 850.) If the moving party makes a prima facie showing that justifies judgment in its favor, the burden shifts to the opposing party to make a prima facie showing of the existence of a triable issue of material fact as to the cause of action. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, at p. 849.)

In determining whether the parties have met their respective burdens, we " 'consider[] all the evidence set forth in the moving and opposition papers except that to which objections were made and sustained.' " (*State Dept. of Health Services v. Superior Court* (2003) 31 Cal.4th 1026, 1035.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar*, *supra*, 25 Cal.4th at p. 850.)

### B. FEHA's Protections Against Disability Discrimination

"FEHA prohibits several employment practices relating to physical disabilities. First, it prohibits employers from refusing to hire, discharging, or otherwise discriminating against employees because of their physical disabilities. (Gov. Code,[8] § 12940, subd. (a).) Second, it prohibits employers from failing to make reasonable accommodation for the known physical disabilities of employees. (*Id.*, subd. (m).) Third, it prohibits them from failing to engage in a timely and good faith interactive process with employees to determine effective reasonable accommodations. (*Id.*, subd. (n).) Fourth, it prohibits them from retaliating against employees for opposing practices forbidden by FEHA. ([]§ 12940, subd. (h).)" (*Nealy v. City of Santa Monica* (2015) 234 Cal.App.4th 359, 371 (*Nealy*).)

---

[8] All further unspecified statutory references are to the Government Code.

11

Stated differently, FEHA makes it an unlawful employment practice to discriminate against an employee "in the terms, conditions, or privileges of employment because of physical or mental disability or medical condition. (§ 12940, subd. (a).) FEHA, however, 'does not prohibit an employer from . . . discharging an employee with a physical or mental disability, . . . where the employee, because of his or her physical or mental disability, is unable to perform his or her essential duties even with reasonable accommodations. . . .' (§ 12940, subd. (a)(1).)" (*Moore v. Regents of University of California* (2016) 248 Cal.App.4th 216, 231–232; accord, *Zamora v. Security Industry Specialists, Inc.* (2021) 71 Cal.App.5th 1, 30 (*Zamora*).)

Although separate causes of action exist for each of these unlawful practices (*Nealy*, *supra*, 234 Cal.App.4th at p. 371), Brown's complaint does not assert a separate cause of action for failure to engage in a good faith interactive process and instead has alleged it as part of her failure to accommodate claim.[9] We first address Brown's reasonable accommodation claim and then examine her claim for disability discrimination.

*C. Reasonable Accommodation Cause of Action*

"FEHA requires employers to make reasonable accommodation for the known disability of an employee unless doing so would produce undue hardship to the employer's operation." (*Nealy*, *supra*, 234 Cal.App.4th at p. 373; see § 12940, subd. (m)(1).) "Relatedly, the employer is required 'to engage in a timely, good faith,

---

[9] Brown appears to misstate the causes of action in her appellant's reply brief, where she asserts that the County's response to the October 28, 2020 doctor's note "creates triable issues of fact that requires reversal of the order granting summary adjudication *as to both* the *breach of the interactive process cause of action* and *also as to the denial of reasonable accommodation ca[u]se of action*." (Italics added.) The operative complaint, filed on March 8, 2022, asserts only a single cause (seventh cause of action) pertaining to the County's alleged denial of reasonable accommodation and refusal to engage in the interactive process. Brown's assertion of a single cause of action does not affect our analysis, as the claims are interrelated. (*Gelfo v. Lockheed Martin Corp.* (2006) 140 Cal.App.4th 34, 54 (*Gelfo*).)

12

interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability . . . .' ([]§ 12940, subd. (n).)" (*Lin v. Kaiser Foundation Hospitals* (2023) 88 Cal.App.5th 712, 728 (*Lin*).) The statute defines " '[u]ndue hardship' " as "an action requiring significant difficulty or expense, when considered in light of" specified statutory factors like the nature and cost of the accommodation needed, the overall financial resources of the covered entity and size of the affected business, and the type of operations and functions of the workforce of the entity. (§ 12926, subd. (u).)

"A reasonable accommodation is a modification or adjustment to the work environment that enables the employee to perform the essential functions of the job he or she holds or desires." (*Nealy*, *supra*, 234 Cal.App.4th at p. 373.) It may include "[j]ob restructuring, part-time or modified work schedules, reassignment to a vacant position, . . . and other similar accommodations for individuals with disabilities." (§ 12926, subd. (p)(2); see *Kaur v. Foster Poultry Farms LLC* (2022) 83 Cal.App.5th 320, 345 (*Kaur*).) "Once notified of a disability, the employer's burden is to take positive steps to accommodate the employee's limitations. The employee also retains a duty to cooperate with the employer's effort by explaining his or her disability and qualifications. Reasonable accommodation thus envisions an exchange between employer and employee where each seeks and shares information to achieve the best match between the employee's capabilities and available positions." (*Brown v. Los Angeles Unified School Dist.* (2021) 60 Cal.App.5th 1092, 1108 (*Brown*).)

"The elements of a reasonable accommodation cause of action are (1) the employee suffered a disability, (2) the employee could perform the essential functions of the job with reasonable accommodation, and (3) the employer failed to reasonably accommodate the employee's disability." (*Nealy*, *supra*, 234 Cal.App.4th at p. 373; *Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1010.)

" ' "Ordinarily, the reasonableness of an accommodation is an issue for the jury." ' " (*Kaur*, *supra*, 83 Cal.App.5th at p. 346.)  Nevertheless, an employer can prevail on summary judgment on a claim of failure to reasonably accommodate by establishing through undisputed facts " 'that (1) reasonable accommodation was offered and refused; (2) there simply was no vacant position within the employer's organization for which the disabled employee was qualified and which the disabled employee was capable of performing with or without accommodation; or (3) the employer did everything in its power to find a reasonable accommodation, but the informal interactive process broke down because the employee failed to engage in discussions in good faith.' " (*Id.* at p. 347.)

Only the third element of the reasonable accommodation cause of action—whether the employer failed to reasonably accommodate Brown's disability—is in dispute in this appeal.  Brown does not materially dispute that the County reasonably accommodated her temporary total disability between May 2019 and October 2020 by granting her a leave of absence to recover from carpal tunnel release surgery.  The doctor's notes submitted by Brown during that period indicated that due to the surgery she was temporarily but totally disabled.[10]

Brown's appeal focuses on the approximately six-month period between November 2020 and May 2021, when she contends the County engaged in an adverse employment action by keeping her on unpaid leave and refusing to reasonably

---

[10] In her opposition papers to the motion, Brown objected to statements in the Carrillo declaration summarizing and authenticating the doctor's notes on grounds of lack of foundation and lack of personal knowledge (Evid. Code, §§ 403, 702).  The trial court declined to rule on the evidentiary objections, preserving them for appeal under the summary judgment statute.  (Code Civ. Proc., § 437c, subd. (q).)  On appeal, Brown does not reassert or address the evidentiary objections to the declaration or in relation to the doctor's notes but refers to the evidence throughout her appellate briefs, focusing on the doctor's notes submitted on October 29, 2020, and over the next several months through May 2021.  Brown has therefore forfeited on appeal any objection to the doctor's notes or their foundation.

accommodate her request to return to work starting with a 12-hour work week and gradually increasing to full-time. She contends the County's response to her October 2020 e-mail creates triable issues of fact as to breach of the interactive process and denial of reasonable accommodation because (1) putting her on unpaid leave does not qualify as a reasonable accommodation, and (2) the undisputed evidence does not establish that the County offered reasonable accommodation and was refused, or that it engaged in a good faith interactive process.

To address these arguments, we consider the evidence submitted in the motion and opposition papers relevant to the reasonable accommodation claim. Brown asserts that the County's response to her October 2020 e-mail requesting an accommodation to return to work starting in November 2020 was to refuse the accommodation, requiring her to remain on unpaid leave. She argues that unpaid leave is not a lawful accommodation of a disability when the employee is able to perform the functions of the job with reasonable accommodation. (See *Wallace v. County of Stanislaus* (2016) 245 Cal.App.4th 109, 134 (*Wallace*) ["Under California law, '[w]hen an employee can work with a reasonable accommodation other than a leave of absence, an employer may not require that the employee take a leave of absence.' "]; Cal. Code Regs., tit. 2, § 11068, subd. (c).)

The record does not support Brown's characterization of the County's response to her proposed accommodation. Between May 2019 and October 2020, Brown's doctor's notes indicated that she was temporarily but totally disabled following her carpal tunnel release surgery. In October 2020, Brown communicated her ability to return to work part time. The October 2020 doctor's note specifically provided for a return to work trial beginning November 17, 2020, for three days per week at four hours per day, increasing each week by one hour per day and to be reevaluated after the third week, with restrictions on repetitive bending/stooping and forceful or repetitive bilateral gripping/grasping/fine manipulation. The doctor's note stated, "If these restrictions can not [*sic*] be accommodated by the employer then Ms. Brown should be considered

15

medically temporarily totally disabled." Thus, the only alternative to the restrictions proposed by the doctor's note was to continue Brown's status as temporarily totally disabled, justifying the continuation of Brown's unpaid leave while the parties engaged in an interactive process to determine an effective accommodation.

This circumstance is distinguishable from that illustrated in *Wallace*, *supra*, 245 Cal.App.4th at page 134, where the employer placed the employee on unpaid leave, asserting it was "the most reasonable accommodation" available, after erroneously concluding the employee could not perform the essential functions of his position. The County did not substitute unpaid leave for a reasonable return to work accommodation. Rather, the County kept Brown on unpaid leave only as part of the accommodation process until the parties could agree on an accommodation. Brown's unpaid leave ended when the parties successfully identified the accommodation adopted in May 2021.

The County's actions do not amount to a failure to accommodate. Courts have recognized that in appropriate circumstances, unpaid leave can present "a way to put a disabled employee on hold while the attempt to locate a permanent position is ongoing." (*Jensen v. Wells Fargo Bank* (2000) 85 Cal.App.4th 245, 264; *id*. at p. 263 ["Holding a job open for a disabled employee who needs time to recuperate or heal is in itself a form of reasonable accommodation and may be all that is required where it appears likely that the employee will be able to return to an existing position at some time in the foreseeable future."].)

Nor does the record support Brown's contention that the interactive process in this case broke down due to the County's " 'take it or leave it' demand" for a minimum 20-hour work week. (Capitalization omitted.) The County made a prima facie showing that it engaged in good faith with Brown to identify a reasonable accommodation for her disability that would not impose an undue burden on the program service aides to keep up with referrals to the program and address IHSS's backlog. (*Kaur*, *supra*, 83 Cal.App.5th at p. 347.) It is undisputed that in response to the October 2020 e-mail and doctor's note,

16

Flores (the accommodations officer at the time) informed Brown on November 2, 2020, that the County could accommodate her with a schedule of 20 hours per week. The County's initial response, in which it proposed a 20-hour work week accommodation, is documented in several places in the record, including in the declarations of Christy and Carrillo and in Brown's deposition testimony and declaration.[11]

Although Brown disputed certain details about her conversation with Flores (such as whether Flores suggested that Brown retire and whether Flores acknowledged the missing ergonomic chair), Brown acknowledged in her testimony and declaration that Flores had communicated to her that the County could not accommodate her at fewer than 20 hours per week. The record therefore does not support Brown's assertion (made for the first time in her reply brief on appeal) that the County refused to consider any accommodation short of a full-time work week.[12]

---

[11] The County also proffered an undated, unsigned "Request for Accommodation Form B," attached as an exhibit to the Carrillo declaration, as additional documentation of Flores's November 2, 2020, conversation with Brown. Carrillo stated that the "Form B" paperwork prepared in the usual course of business and maintained in the County's files memorialized Flores's conversation with Brown and the determination at the time that accommodation could not be provided. Brown argues that the "Form B" exhibit is contradictory and reflects the County's lack of good faith by summarily rejecting part-time work.

The "Form B" in the record does contain seemingly contradictory statements – stating in one paragraph that Flores informed Brown " 'that the return to work part time, i.e. 20 hours per work week is a viable option for reasonable accommodations' " and in another paragraph stating that the program service aid position is full time and that part-time coverage "has proven to be an unviable option and has negatively impacted the [d]epartment." Nevertheless, those statements are consistent with the County's accommodation determination expressed throughout the record, which reflected a tension in the County's decision to accommodate Brown with a part-time reduced schedule despite management's concerns that such accommodation would result in an increasing backlog of IHSS referrals.

[12] At oral argument, Brown's counsel continued to dispute that the County had offered the accommodation of a 20-hour work week to Brown, but conceded that such an offer would have been a reasonable accommodation as of November 17, 2020.

Moreover, the evidence establishes that the County did not insist on a "take it or leave it" approach but continued to communicate with Brown regarding the possibility of adopting a hybrid part-time schedule while seeking clarification of the physical restrictions in the doctor's notes. Following Brown's October 2020 accommodation request, her supervisor Christy spoke with accommodations officer Flores and supervisor Lum about the ability of the office to accommodate less than full-time work, given the "tremendous pressure from management and from the Board of Supervisors to reduce the backlog of [IHSS] referrals and keep those numbers down." Christy and Lum agreed with Flores that the office could try to accommodate Brown once "she was able to work 20 hours per week" but believed the proposed accommodation beginning at 12 hours per week "would not have been workable" because Brown "would not have been able to process individual referrals without delay, much less keep up with her entire case load – and would have imposed too great a burden on the [applications readiness] unit and [its] clients."

As noted *ante*, Flores conveyed this information to Brown in their conversation on November 2, 2020. The doctor's notes Brown subsequently submitted in December 2020 and February 2021 did not respond to the County's proposed accommodation of a 20-hour work week, though Brown indicated in an e-mail to Christy on December 9, 2020 that "the doctor is still saying [three] days a week" and "her determination did not change." Christy spoke with Brown on December 14, 2020, seeking clarification of the most recent doctor's note, which Christy noted (in a follow-up e-mail to Brown that same day) continued to refer to a progressive return to work schedule based on the originally proposed November 2020 dates. Christy asked Brown to "attempt to obtain additional information and/or revision of the dates when the progressive schedule starts and if such schedule has to be followed whenever you return to work." Christy also reported her conversation with Brown in an e-mail to Flores, noting that Brown had asked whether her "current [return to work] schedule can be accommodated" to which Christy indicated it

18

had to be "part time or more." Christy further stated in her e-mail to Flores that when asked by Brown if that time can be from home, Christy replied that program service aides "have to be in the office at least one day per week."

This undisputed evidence demonstrates that in November and December 2020, the County engaged Brown in discussions about accommodating her return to work, requested additional clarification of Brown's proposed schedule and restrictions, and explained the County's determination regarding part-time work and the need for at least one day per week to be in the office. Christy spoke again with Brown in February 2021 regarding Brown's February 4, 2021 doctor's note, which retained the restriction starting Brown at three days per week for four hours per day. The dialogue continued after Brown submitted a doctor's note in late February 2021 that modified her restrictions to accommodate a 30-hour work week from home or 12 hours per week in the office. The County responded by proposing a hybrid schedule (one day in the office and the other days from home) and seeking clarification of the limitations on gripping, grasping, sitting, and standing.

Although Brown wrote in an e-mail to Lum on February 25, 2021, that she would follow up with her doctor about the proposed hybrid work schedule accommodation, doctor's notes submitted in March and April 2021 did not address the hybrid proposal and imposed the same schedule restrictions as the February 24, 2021 doctor's note. Thus, accommodations officer Carrillo conducted an additional interactive meeting with Brown on April 30, 2021, ultimately securing Brown's agreement for an accommodation of 28 hours per week (four, six-hour days working from home and one, four-hour day in the office).

This evidence satisfies the County's initial burden on summary judgment (Code Civ. Proc., § 437c, subd. (*o*); *Aguilar*, *supra*, 25 Cal.4th at p. 850) of demonstrating that it "t[ook] positive steps to accommodate the employee's limitations" (*Brown*, *supra*, 60 Cal.App.5th at p. 1108) by modifying the work schedule to accommodate Brown while

19

"enabl[ing] [her] to perform the essential functions of the job." (*Nealy*, *supra*, 234 Cal.App.4th at p. 373; § 12926, subd. (p)(2).) Brown argues, however, that triable issues exist as to the reasonableness of the County's accommodation based on the County's refusal to accept Brown's proposed accommodation of a 12-hour work week (to be increased by 3 hours each week), or a 100 percent remote work schedule of 30 hours weekly, as proposed by Brown in February 2021. Brown also maintains that a triable issue of fact exists as to the responsibility for the six-month impasse, which she characterizes as a "breakdown in the interactive process" before the parties arrived at a reasonable accommodation.

We disagree that these contentions give rise to any triable issues of material fact precluding the denial of summary adjudication as to her reasonable accommodation claim. Brown argues that the County "relies upon a straw man of a protracted 12-hour work week to justify its decision to keep [her] out of the workplace" when, in fact, the accommodation she proposed was for only a *single* 12-hour week, which would be increased thereafter, arriving within three weeks at 18 hours per week. Brown points out that this proposal was "only two hours fewer than what the County proposed." However, "FEHA does not obligate an employer to choose the best accommodation or the specific accommodation a disabled employee or applicant seeks." (*Raine v. City of Burbank* (2006) 135 Cal.App.4th 1215, 1222 (*Raine*); see *Hanson v. Lucky Stores, Inc.* (1999) 74 Cal.App.4th 215, 228.) There is no dispute that the accommodations ultimately selected were acceptable to Brown, who returned to work accordingly as of May 25, 2021. (See *Hanson*, at p. 228, fn. 11.)

Furthermore, Brown's argument concerning her proposed accommodation of a graduated schedule (starting at 12 hours per week, followed by 15, then 18, and aspiring to increase eventually to full time) overlooks the County's showing in support of its determination that a reduced schedule of fewer than 20 hours per week was insufficient

for Brown to perform the essential functions of the program service aide position and would impose a hardship IHSS operations.

"FEHA . . .does not require an employer to make an accommodation 'that is demonstrated by the employer or other covered entity to produce undue hardship . . . to its operations.' " (*Swanson v. Morongo Unified School Dist.* (2014) 232 Cal.App.4th 954, 969.)  The County proffered undisputed evidence regarding the applications readiness unit's backlog in processing IHSS referrals and the unit's prior, unsuccessful experience granting part-time accommodation that did not provide for adequate coverage of referrals.  Brown has not pointed to any evidence that would create a triable issue challenging the County's prima facie showing of hardship were it to adopt a more truncated work schedule to accommodate Brown's disability.  (See § 12926, subd. (u)(2), (4).)

Brown also challenges what she characterizes as the County's rejection of the 30-hour at-home schedule proposed in her February 24, 2021 doctor's note.  Brown asserts there is "nothing in the record to suggest the County took" her request for a 30-hour at-home work week "seriously" until the interactive meeting with Carrillo on April 30, 2021, thus requiring her to remain on unpaid leave "for three more months" (i.e., between her February 24 doctor's note and May 25 return to work).  Brown contends that the aftermath of the COVID-19 pandemic and widespread availability of remote work technologies have influenced courts' assessment of the reasonableness of an exclusively remote work accommodation, creating a triable issue as to the County's refusal to consider the remote work option.  (See *Smithson v. Austin* (7th Cir. 2023) 86 F.4th 815, 822 ["[W]e must now assess whether in-person attendance is essential on a context-specific basis."].)

Even viewing the evidence in the light most favorable to Brown and resolving doubts in her favor (*Yanowitz*, *supra*, 36 Cal.4th at p. 1037), the record belies Brown's interpretation of the County's response to Brown's proposed remote work option.  In

December 2020, Christy and Brown discussed the possibility of Brown working part time from home and Christy informed Brown that program service aides "have to be in the office at least one day per week." Despite Brown having discussed working from home (with one day in office), Brown's doctor's notes continued to focus exclusively on a reduced hours in office accommodation, making the only alternative temporary total disability. In February 2021, when Brown communicated an ability to work a 30-hour week from home, the County immediately engaged in further discussions and proposed a hybrid schedule. The County's response is reflected in Brown's February 25, 2021 e-mail to Lum stating that she would follow up with her doctor about whether working from home five days a week can instead "be a hybrid model" with four days at home.

On these facts, we conclude that any delay between February 24 and April 30, 2021, in arriving at the reasonable accommodation ultimately agreed upon, does not appear to be attributable to the County. Rather, the County quickly proposed the hybrid schedule (as soon as Brown's doctor's notes proposed the 30-hour remote work week) and awaited a response from Brown and clarification regarding certain other physical restrictions. The undisputed evidence thus does not support an inference that the County refused to consider Brown's proposed work from home alternative or otherwise failed to reasonably accommodate her by not electing the specific accommodations she initially sought.

We decide that no triable issue of fact exists as to the alleged breakdown of the interactive process. The interactive process begins with " ' "[t]he employee bear[ing] the burden of giving the employer notice of the disability. [Citation.] This notice then triggers the employer's burden to take 'positive steps' to accommodate the employee's limitations. . . . [¶] . . . The employee, of course, retains a duty to cooperate with the employer's efforts by explaining [his or] her disability and qualifications. [Citation.] Reasonable accommodation thus *envisions an exchange between employer and employee where each seeks and shares information to achieve the best match between the*

22

*employer's capabilities and available positions.*" ' " (*Raine*, *supra*, 135 Cal.App.4th at p. 1222, italics added.) In short, "when an employer needs to fill a position and an applicant or employee desires the position, the interactive process is designed to bring the two parties together to speak freely and to determine whether a reasonable, mutually satisfactory accommodation is possible to meet their respective needs." (*Gelfo*, *supra*, 140 Cal.App.4th at p. 62.) Responsibility for failure of the interactive process "rests with the party who failed to participate in good faith." (*Id*. at p. 54.)

Brown attributes to the County the "impasse which lasted more than six months" in attempting to find a reasonable accommodation. However, for the reasons discussed *ante*, the record reflects the County's timely response to Brown's October 2020 e-mail and doctor's note seeking accommodation. The record also reflects the County's reasonable efforts to ascertain Brown's restrictions and arrive at an accommodation that would allow her to fulfill the functions of her position and not create hardship for the employer. Simply put, the evidence does not support an inference that the County failed to participate in good faith in the interactive process.

Brown argues that evidence in the record shows that in May 2019, when Brown was working part-time as accommodation for her disability and before she took medical leave for her carpal tunnel release surgery, Lum and the IHSS's unit management resolved not to accommodate her going forward.[13] She asserts that Lum's stated desire

---

[13] Brown relies on a series of handwritten work journal entries from May 2019 in which Lum documented speaking to his supervisor in IHSS and his direct report, Christy, about accommodations for Brown. In his deposition testimony, Lum explained the journalling as a way to not "have to remember anything." Lum reviewed the entries, which he read into the record, including: " 'Decision: can't accommodate [Mona Brown]' "; " 'Consult with R. Flores first before meeting with [Mona Brown]' "; Referral statistics followed by " '[e]xtra burden on 5 remaining PSAs' "; and " 'Granted [reasonable accommodation] in the past, 10-plus years to detriment of unit; lead to other stress.' " Lum testified that he believed the accommodation referenced in the

23

not to accommodate Brown after her medical leave for surgery "is arguably evidence of discriminatory intent" which may be considered a factor in the breakdown of the interactive process. (See *Kinsella v. Baker Hughes Oilfield Operations, LLC* (7th Cir. 2023) 66 F.4th 1099, 1105 [recognizing "that an employer's discriminatory animus or intent can factor into attributing fault for a breakdown of the interactive process"].) She further asserts that statements made to her by Flores, including suggesting that Brown " 'should consider retiring' " and that management would not let Brown return to work unless it is " 'at least 20 hours' " support her position that the County did not act in good faith when engaging with her about a reasonable accommodation.

These arguments miss the mark by focusing on disputed evidence (i.e., Lum's purported decision in May 2019 to not provide further accommodation to Brown, or Flores's alleged statement that Brown consider retiring) that is immaterial to the trial court's summary adjudication decision. Lum's intentions as expressed in May 2019 predate the start of the relevant interactive process by 18 months. As cases in the related retaliation context illustrate, that lack of proximity—regardless of the meaning ascribed to the journal notes—is too remote to raise an inference of intent with respect to the County's good faith. (See, e.g., *Le Mere v. Los Angeles Unified School Dist.* (2019) 35 Cal.App.5th 237, 244 [holding that a two-year gap between an employee's protected conduct and an adverse employment action is insufficient "as a matter of law to support an inference of causation"].) Moreover, Lum *did* engage with Brown and the

handwritten notes pertained to a request from that time frame (in 2019) and not to the County's future response to a request for accommodation.

In its objections to Brown's evidence in opposition to the motion, the County objected on grounds of hearsay without exception (Evid. Code, §§ 1200, 1201) to the handwritten notes, attached as an exhibit to the deposition transcript. Brown counters that the handwritten notes are admissible not for the truth of the matter asserted but as a statement of Lum's intent and then existing state of mind. (Evid. Code, § 1250.) Because we refer only to Lum's deposition testimony submitted in opposition to the motion, to which the County has not objected, we need not resolve the parties' dispute concerning the admissibility of the handwritten notes.

accommodations officer beginning in October 2020 to arrive at a reasonable accommodation, rendering irrelevant any purported prior contrary intent. So, too, the undisputed evidence that Flores, along with Lum, engaged with Brown about Brown's work restrictions and the County's determination that a return to work required a minimum of 20 hours of work per week contravenes any inference of discriminatory intent from Flores's purported suggestion that Brown consider retirement.

The cases Brown references for support do not demonstrate otherwise. Brown cites *Taylor v. Phoenixville School Dist.* (3d Cir. 1999) 184 F.3d 296, for its description of what the interactive process should entail. There, the Court of Appeals concluded the school district employer did not meet its burden on summary judgment of establishing as a matter of law that it had engaged in a good faith interactive process, where the district received notice of the plaintiff's disability and desire for accommodations but "offered no accommodations or assistance in finding them, made [the plaintiff]'s job more difficult, and simply sat back and continued to document her failures." (*Id*. at p. 315.) The court explained that this fell below the standard for an interactive process, which "requires the employer to take some initiative" and "would have little meaning if it was interpreted to allow employers, in the face of a request for accommodation, simply to sit back passively, offer nothing, and then, in post-termination litigation, try to knock down every specific accommodation as too burdensome." (*Ibid*.)

Brown also cites *Sparrow v. District of Columbia Office of Human Rights* (D.C. 2013) 74 A.3d 698 for the proposition that an employer's " 'take it or leave it' offer" for accommodation can be "compelling evidence" of the employer's failure to engage in an interactive dialogue. (*Id*. at p. 705.) There, while awaiting a hip replacement, the plaintiff asked his employer to reduce his 65-hour restaurant work week by 10 to 15 hours and to spend less time on his feet while at work. (*Id*. at p. 700.) The employer responded by informing the plaintiff it was eliminating his position and giving him a day

to consider accepting a part-time position with a $13,000 salary reduction and fewer responsibilities.  (*Id*. at p. 701.)

The facts of Brown's situation are not comparable to either *Taylor* or *Sparrow*, both of which involved processes deficient in communication and lacking in any exchange or sharing of information with the employee to arrive at a reasonable and effective accommodation.  By contrast, the record here reflects an ongoing effort by the County to exchange information with Brown, informing her at various points of its inability to accommodate less than a part-time (20-hour per week) schedule and of the need for any work from home accommodation to include one day in the office.  Despite this information sharing, Brown's doctor's notes continued to take an either–or approach (based exclusively on a graduated 12- to 18-hour in office arrangement, or the continuation of temporary total disability) until the February 24, 2021 doctor's note, at which point the parties engaged in further discussions, arriving within two months at the agreed upon accommodation that allowed Brown to return to work.

We recognize Brown's frustration in sustaining six-months' additional unpaid leave while the parties attempted to identify a "reasonable, mutually satisfactory accommodation . . . to meet their respective needs."  (*Gelfo*, *supra*, 140 Cal.App.4th at p. 62.)  Nevertheless, on this record, we conclude that a reasonable jury could not find a failure by the County to engage in the interactive process or reasonably accommodate Brown's disability.  (Cf. *Kaur*, *supra*, 83 Cal.App.5th at p. 347.)  The trial court did not err in granting summary adjudication of Brown's reasonable accommodation cause of action.

### D. Disability Discrimination Cause of Action

" 'FEHA proscribes two types of disability discrimination:  (1) discrimination arising from an employer's intentionally discriminatory act against an employee because of his or her disability (disparate treatment discrimination), and (2) discrimination resulting from an employer's facially neutral practice or policy that has a disproportionate

26

effect on employees suffering from a disability (disparate impact discrimination).' "
(*Zamora*, *supra*, 71 Cal.App.5th at p. 30.)  Generally, "[a] prima facie case of disability
discrimination under FEHA requires the employee to show he or she (1) suffered from a
disability, (2) was otherwise qualified to do his or her job, and (3) was subjected to
adverse employment action because of the disability."  (*Nealy*, *supra*, 234 Cal.App.4th at
p. 378; see *Faust v. California Portland Cement Co.* (2007) 150 Cal.App.4th 864, 886;
see § 12940, subd. (a); *Brown*, *supra*, 60 Cal.App.5th at p. 1105 [noting "[t]he elements
of a prima facie case of discrimination vary depending on the particular facts"].)

The framework used to analyze a disability discrimination claim varies based on
whether the employee presents direct or circumstantial evidence of discrimination.
(*Zamora*, *supra*, 71 Cal.App.5th at p. 31.)  While cases involving circumstantial evidence
of discrimination proceed under the traditional three-stage *McDonnell Douglas*[14] burden-
shifting test, courts have held that the "three-stage framework and the many principles
adopted to guide its application do not apply in discrimination cases where . . . the
plaintiff presents direct evidence of the employer's motivation for the adverse
employment action."  (*Wallace*, *supra*, 245 Cal.App.4th at p. 123; accord, *Zamora*, at
pp. 34–35.)

Brown contends that summary adjudication of her disability discrimination cause
of action was improper because the record contains direct evidence of discriminatory
intent, namely that Brown was initially denied reasonable accommodation and placed on
unpaid leave (constituting an adverse employment action) *because of* her disability.
Brown maintains that because the undisputed evidence establishes that she could perform
her job with reasonable accommodations (as occurred starting in May 2021), triable

---

[14] The United States Supreme Court in *McDonnell Douglas Corp. v. Green* (1973)
411 U.S. 792 established a burden-shifting framework for trying claims of intentional
employment discrimination cases based on circumstantial evidence.

27

issues of fact exist as to the County's motive or intent in refusing to provide accommodation earlier and retaining her on unpaid leave.

Brown's claim fails as a matter of law because the sole basis for her discrimination cause of action is the County's alleged failure to provide reasonable accommodation for her known disability. Specifically, Brown alleged she could perform the essential functions of her job with reasonable accommodation, but rather than complying with the law, the County refused to provide her reasonable accommodation for her physical disability because it "knew [it] would prevent [] Brown from returning to her job." (See *Oakland Raiders*, *supra*, 131 Cal.App.4th at p. 630; *Overton v. Walt Disney Co.* (2006) 136 Cal.App.4th 263, 268) [courts reviewing an appeal on a motion for summary judgment look to the pleadings to define the asserted claim].) In opposing summary adjudication on this issue, Brown relies on the same facts underlying her reasonable accommodation cause of action. She argues conclusorily that "[g]iven those facts, summary adjudication as to the discrimination cause of action was improper."

Having determined there are no triable issues of material fact concerning the County's provision of reasonable accommodation, Brown cannot prevail on her disability discrimination cause of action. Stated differently, the undisputed evidence establishes that the County did not fail to engage in a good faith interactive process, was not responsible for the delay in ascertaining a reasonable accommodation acceptable to both parties, and did not take any adverse employment action against Brown. Because there is no triable issue of material fact as to an adverse employment action, the trial court did not err in granting summary adjudication of Brown's cause of action for discrimination based on disability. (Cf. *Nealy*, *supra*, 234 Cal.App.4th at p. 378; Code Civ. Proc., § 437c, subd. (*o*).)

Furthermore, Brown appears to conflate what are, under the statute, separate and distinct claims. We agree with the assessment in *Brown* that the alleged commission of one specific prohibited employment practice (i.e., failure to reasonably accommodate)

28

does not, without more, "constitute commission of all other prohibited employment practices under the broad rubric of policies or practices affecting the 'terms, conditions or privileges of employment.' " (*Brown*, *supra*, 60 Cal.App.5th at p. 1106.) As the Court of Appeal explained in that case, "[s]uch an interpretation would be contrary to the whole point of specifically separating conduct into individual unlawful employment practices" under FEHA. (*Id*. at pp. 1106–1107.)

In *Brown*, the Court of Appeal observed that the plaintiff's discrimination claim derived from her allegation that the school district employer allegedly "failed to engage meaningfully with her in the interactive process and would not reasonably accommodate her disability." (*Brown*, *supra*, 60 Cal.App.5th at p. 1107.) The court declined to construe those allegations, which it recognized pertained to the plaintiff's reasonable accommodation and interactive process causes of action, "as adverse employment actions sufficient to support a claim of discrimination in the terms and conditions of employment." (*Ibid*.) It reasoned that in framing her discrimination cause of action, the plaintiff had "conflated ' "adverse employment action" with the failure to accommodate and failure to engage claims.' " (*Ibid*.)

Here, as in *Brown*, Brown has not alleged that she was the target of disparate treatment because of her disability, nor that the County has a policy or practice of having a disproportionate impact on persons with a disability. (See *Brown*, *supra*, 60 Cal.App.5th at p. 1107; cf. *Zamora*, *supra*, 71 Cal.App.5th at p. 30.) Instead, her claim in opposition to the motion is that by failing to engage in the interactive process and timely provide accommodation for her disability, the County required her to remain on unpaid leave (i.e., imposed an adverse employment action) because of her disability. Brown has simply reasserted her reasonable accommodation claim as a disability discrimination claim.

Having already decided that the evidence on summary judgment fails as a matter of law to establish Brown's claim based on failure to reasonably accommodate her

29

disability, we conclude there are no remaining triable issues of material fact. The trial court did not err in granting summary adjudication of Brown's cause of action for disability discrimination.

## III. DISPOSITION

The judgment is affirmed. In the interests of justice, the parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

_____
                Danner, Acting P. J.

WE CONCUR:

_____
Lie, J.

_____
Bromberg, J.

**H051702**
***Brown v. County of Santa Clara***