In the

# United States Court of Appeals
## For the Seventh Circuit

No. 16-1807

JOYCE WHITAKER,

*Plaintiff-Appellant*,

*v.*

WISCONSIN DEPARTMENT OF HEALTH SERVICES,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:13-cv-00938-LA — **Lynn Adelman**, *Judge*.

ARGUED NOVEMBER 29, 2016 — DECIDED FEBRUARY 27, 2017

Before BAUER, FLAUM, and HAMILTON, *Circuit Judges*.

HAMILTON, *Circuit Judge*. Plaintiff Joyce Whitaker worked for the Wisconsin Department of Health Services. The Department fired Whitaker when she did not return to work after exhausting her unpaid statutory and contractual medical leave. Whitaker sued, claiming that the Department failed to accommodate her disability and terminated her employment in violation of the Rehabilitation Act. The district court granted summary judgment in favor of the Department on

several grounds. We agree with the district court that Whitaker failed to establish that she was an "otherwise qualified" employee, as required by the Rehabilitation Act, and we affirm the grant of summary judgment.

I.   *Factual and Procedural Background*

   A.  *Employment History and Disability Accommodation*

On appeal from a grant of summary judgment, we accept as true the evidence offered by the non-moving party, and we draw all reasonable inferences in that party's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009). Plaintiff Joyce Whitaker first started working for Milwaukee County in 2001. She initially worked as a corrections officer, but after suffering a back injury in 2005, she transitioned to other positions with the County. She ultimately became an economic support specialist in the Income Maintenance Program, which manages Milwaukee's applications for public assistance. Whitaker's responsibilities included processing applications for benefits, answering phone calls, and general case management.

In 2009, the Wisconsin legislature directed the Wisconsin Department of Health Services to assume administration of Milwaukee County's public assistance program. 2009 Wis. Act. 15, § 22, codified at Wis. Stat. § 49.825. Whitaker continued in her position, where she worked on behalf of the County but was under the supervision of the Department of Health Services. The Department had authority to make employment decisions regarding Whitaker, Wis. Stat. § 49.825(3)(b)(1), and it made the termination decision that she challenges in this suit.

The Department was aware of Whitaker's disability at least as early as 2009. On December 8, 2009, Whitaker filed a

disability form seeking an accommodation for her chronic back pain. She requested permission to stand and stretch for five minutes once every thirty minutes during the workday. The Department approved her request.

B. *Consecutive Leaves of Absence*

In the summer of 2010, Whitaker took the first of several consecutive leaves of absence. She never returned to work before she was fired in November 2010. During those months, Whitaker requested and received a number of extensions until she had exhausted several types of leave that were available to her. At times she made clear that she was requesting leave due to her disability. At other times it was less clear why she requested leave. The events unfolded as follows.

On August 27, 2010, Whitaker requested two weeks of continuous leave under the Family and Medical Leave Act (FMLA) due to her "recurrent back pain." The Department approved her request and set her return date for September 10, 2010. Then, on September 8, Whitaker requested additional FMLA leave until December 27, 2010 to take care of a family member and because of her medical condition. The Department authorized leave through October 18, 2010, but informed Whitaker that her FMLA leave for the year would be exhausted at that point. The Department advised Whitaker that she could, however, request an unpaid leave of absence for up to 30 more days under section 2.24 of her contract: "Leaves of absence without pay [not] exceeding 30 calendar days may be granted for good reason to any employee with the approval of their [sic] department head or designee … . Request for such leaves shall be made by the employee as far as possible in advance of the date on which such leave is to

begin." The Department also explained the process for requesting that leave.

On October 18, Whitaker submitted a request for contractual leave without pay through December 28, 2010. This time her request said that she sought leave to "take care of [her] ill father" and due to her "own personal illness." It did not mention her back condition specifically. The Department approved her contractual leave until November 5, 2010, but noted that it "will not be granting any additional extensions of this leave" and Whitaker was "*expected to return to work on Monday, November 8, 2010.*" (Emphasis in original.) The Department warned Whitaker that if she failed to return to work, it would begin the termination process.

Whitaker did not return to work on November 8. She did, however, submit two additional notes from her doctor. One, dated November 3, 2010, said only "medical leave of absence until 11/17/10." The second was dated November 12, 2010 and said only "medical leave of absence until 12/17/10." Neither note provided any detail on Whitaker's condition, her course of treatment, or the likelihood of her recovery.

C. *Termination and Lawsuit*

On November 15, 2010, the Department notified Whitaker that it was considering terminating her employment due to her failure to return to work. It scheduled a meeting with her for November 18 to "discuss this pending action and provide any documentation you wish to submit for consideration." Whitaker attended the November 18 meeting with a union representative. She indicated that she still could not return to work. The Department then terminated her employment on November 30, and Whitaker sued.

Whitaker's legal claims have gone through several itera-tions. On appeal, she argues that the Department of Health Services violated Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, by rejecting what she calls her request for an ac-commodation of "finite, unpaid leave" and instead terminat-ing her employment.[1]

The district court granted summary judgment in favor of the Department. First, the court found that Whitaker failed to provide evidence that she could perform the essential func-tions of her position, either with or without an accommoda-tion. Second, the court found that Whitaker had admitted that she was not terminated "solely by reason of her … disability," as required by the Rehabilitation Act. Finally, the court found that Whitaker's accommodation request "amounted to an open-ended leave request," which was not reasonable and would have imposed an undue burden on the Department.

II. *Analysis*

A. *Standard of Review*

We review *de novo* the district court's grant of summary judgment. *Magnus v. St. Mark United Methodist Church*, 688

---

[1] Whitaker filed an earlier lawsuit alleging a violation of the Ameri-cans with Disabilities Act and naming both Milwaukee County and the Wisconsin Department of Health Services as defendants. The Department was dismissed on sovereign immunity grounds, and the district court granted the County's motion for summary judgment because the adverse employment actions were taken by the Department, not the County. We affirmed. *Whitaker v. Milwaukee County*, 772 F.3d 802 (7th Cir. 2014). On August 20, 2013, Whitaker filed this new suit against the Department un-der the Rehabilitation Act. The district court denied the Department's mo-tion to dismiss on claim preclusion grounds but granted its motion for summary judgment, which Whitaker now challenges.

F.3d 331, 336 (7th Cir. 2012). Except for its "solely by reason of" standard, the Rehabilitation Act "incorporates the standards applicable to Title I of the [Americans with Disabilities Act]." *Brumfield v. City of Chicago*, 735 F.3d 619, 630 (7th Cir. 2013). To prevail on her Rehabilitation Act claim, Whitaker must show that: "(1) she is disabled within the meaning of the statute; (2) that she was otherwise qualified for the job in question; (3) that she was discharged or the subject of other adverse action solely because of her disability; and (4) the employment program of which her job was a part received federal financial assistance." *Felix v. Wisconsin Dep't of Transportation*, 828 F.3d 560, 568 (7th Cir. 2016).

To avoid a motion for summary judgment challenging each element, Whitaker must present evidence that, if believed by a trier of fact, would establish each of these elements. *Kotwica v. Rose Packing Co.*, 637 F.3d 744, 748 (7th Cir. 2011). It is undisputed that Whitaker is disabled within the meaning of the statute and that the Department receives federal funds. However, Whitaker failed to present evidence that would allow a trier of fact to find that she was an "otherwise qualified" employee. An employee is "otherwise qualified" when she is capable of performing the "essential functions" of the job with or without a reasonable accommodation. *Brumfield*, 735 F.3d at 631. Since Whitaker failed to establish that she could perform the essential functions of her job, her Rehabilitation Act claim fails. We need not address the Department's argument that Whitaker never made a proper accommodation request in the first place, nor the district court's conclusion that her request was not reasonable.

B. *"Otherwise Qualified" Employee*

For purposes of the Americans with Disabilities Act and the Rehabilitation Act, regular attendance is an essential function of many jobs. See, e.g., *Basden v. Professional Transportation, Inc.*, 714 F.3d 1034, 1037 (7th Cir. 2013) ("An employer is generally permitted to treat regular attendance as an essential job requirement and need not accommodate erratic or unreliable attendance."), citing *EEOC v. Yellow Freight System, Inc.*, 253 F.3d 943, 948–49 (7th Cir. 2001); *Jovanovic v. In-Sink-Erator Division of Emerson Elec. Co.*, 201 F.3d 894, 899–900 (7th Cir. 2000) ("Common sense dictates that regular attendance is usually an essential function in most every employment setting; if one is not present, he is usually unable to perform his job.").

While there may be exceptions to this general rule, the record shows there was no exception in this case: Whitaker's economic support specialist position required regular attendance. The position's responsibilities included answering phone calls, attending in-person meetings with clients, using the Department's internal computer system, and other tasks that required attendance. Whitaker does not provide any evidence that attendance was not an essential function of the job.

Whitaker argues instead that even if attendance was an essential function, the district court erred by analyzing her qualification only without accommodation, rather than also with a reasonable accommodation. This is simply not the case. The district court did consider whether Whitaker was capable of performing the essential functions of her job either *with or without* a reasonable accommodation. Whitaker did not meet this standard without an accommodation because she failed to attend work, and attendance was an essential function of

the job. She did not meet this standard with an accommodation because, as the district court discussed, she did not offer sufficient evidence to establish this element.

Whitaker did not offer any evidence regarding the effectiveness of her course of treatment or the medical likelihood of her recovery. The only medical documents she supplied were two terse doctor notes. One stated "medical leave of absence until 11/17/10" and the other stated "medical leave of absence until 12/17/10." These notes did not explain whether Whitaker was even receiving treatment, let alone the likely effectiveness of the treatment. We have found doctor notes were insufficient to support a reasonable accommodation even if they were more informative than these. See, e.g., *Weigel v. Target Stores*, 122 F.3d 461, 469 (7th Cir. 1997) (affidavit from plaintiff's psychiatrist saying "there was a good chance" that she would be able to return to work was "too conclusory and uninformative" to support conclusion that accommodation would enable plaintiff to attend work regularly). The doctor notes here were even less informative.

Given this shortcoming, Whitaker argues that her declaration provides sufficient evidence that she could perform the essential functions of her job if given an accommodation—that is, that she could attend work on a regular basis if given additional leave. In her September 2015 declaration, Whitaker stated that she received cortisone injections and physical therapy during her leave in the fall of 2010. She also said: "I provided [the Department] with an anticipated return to work date of December 28, 2010 that I would have actually been able to return by if Defendant had extended my medical leave."

It is true that "self-serving affidavits can indeed be a legitimate method of introducing facts on summary judgment." *Widmar v. Sun Chemical Corp.*, 772 F.3d 457, 459–60 (7th Cir. 2014). Moreover, we have taken pains to reject "the misconception that evidence presented in a 'self-serving' affidavit is never sufficient to thwart a summary judgment motion." *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003); see also *Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013) ("Deposition testimony, affidavits, responses to interrogatories, and other written statements by their nature are self-serving. As we have repeatedly emphasized over the past decade, the term 'self-serving' must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment.") (citation omitted).

Nonetheless, Whitaker's declaration is insufficient to avoid summary judgment. Her declaration does not provide sufficient evidence to allow a trier of fact to find that, if the Department had given her additional unpaid leave, she likely would have been able to return to work on a regular basis. While Whitaker said that she was receiving treatment, she did not explain the effectiveness of this treatment or the medical likelihood that it would enable her to return to work regularly. Again, we have found claims with even more medical evidence insufficient. See, e.g., *Basden*, 714 F.3d at 1038 (plaintiff provided "evidence that medication improved her condition; that she had hoped for enough improvement to return to work regularly after leave; and that she subsequently had brief employment that was interrupted by a two-week absence caused by her condition;" that "evidence was insufficient to support a factual finding that [plaintiff] was able to come to work regularly at the time of her termination, or that

her regular attendance could have been expected following the leave she sought or with any other accommodation").

The insufficiency of Whitaker's declaration is compounded by the record, which shows that she had repeatedly requested additional medical leave when her leave was about to expire. See, e.g., *Amadio v. Ford Motor Co.*, 238 F.3d 919, 928–29 (7th Cir. 2001) (in light of employee's attendance record, "the extension of [employee's] already lengthy leave by one more week would have been a futile concession, not a reasonable accommodation").

Since Whitaker failed to establish that she was an "otherwise qualified" employee, we need not address whether she properly requested an accommodation, or whether her accommodation request was reasonable. The district court's grant of summary judgment for the Wisconsin Department of Health Services is

AFFIRMED.