In the

# United States Court of Appeals
## For the Seventh Circuit

No. 22-2566

TAMICA J. SMITHSON,

*Plaintiff-Appellant,*

*v.*

LLOYD J. AUSTIN, III, United States Secretary of Defense,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:20-cv-03021 — **James R. Sweeney, II**, *Judge.*

ARGUED APRIL 20, 2023 — DECIDED NOVEMBER 20, 2023

Before EASTERBROOK, ROVNER, and ST. EVE, *Circuit Judges.*

ROVNER, *Circuit Judge*. Tamica Smithson sued her employer, the Department of Defense Education Activity ("DODEA"), under the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, for disability discrimination and failure to accommodate. The district court granted summary judgement in favor of the defendant. We affirm.

**I.**

DODEA operates 160 schools across the globe to educate the children of military families. Smithson has worked as a science teacher for DODEA since 2004, and has been stationed at a high school in Vilseck, Germany since 2006. She is licensed to teach biology, chemistry, and general science. Smithson has a number of medical conditions including migraines, intracranial hypertension, affective disorder, vertigo, and attention deficit hyperactivity disorder. These conditions, together with the medications that she takes to control them, have adverse effects on her major life activities. She has problems with balance, experiences difficulty walking and driving, has breathing problems, and suffers from impaired vision, speech, and memory.

In 2010, Smithson first asked her employer for accommodations to address her many challenges. Specifically, she requested a flexible start time to her day, giving as an example that she might arrive fifteen minutes late on a day that she was having a migraine and then make up that time at the end of the day. Because her migraines cause dizziness, she also requested permission to be seated during part of the teaching day. In a follow-up email, she told the principal that her delayed start time would not occur frequently. Her employer agreed to those accommodations.

In 2014, Smithson submitted a request for additional accommodations. This time, she asked for immediate relief in the classroom during anxiety attacks; immediate communication of any performance concerns that required correction; specific solutions to decrease the anxiety of unknown expectations regarding her performance; to be excused from frustrating situations such as irate parents or co-workers; the

continued use of memory aids such as Outlook calendar, organizers, and email reminders; extra time to complete certain tasks such as grading policy, paperwork, and trainings; and to keep the first period of the day as her planning period. It is unclear from the record how this request was resolved but it appears that Smithson was able to perform her job to DODEA's satisfaction that year.

The next year, 2015, Smithson requested an alternate work area outside of the building; continued flexible duty reporting time; the ability to be seated in the classroom throughout much of the day; immediate relief during anxiety attacks; immediate communication of performance issues; to be excused from frustrating situations; extra time for completing the tasks she listed in 2014; and the continued assignment of the first period for her planning period. The principal largely granted her requests, telling her that she should notify the administration when she used an alternate work area, when she used flexible reporting time, when she experienced an anxiety attack, and when she needed to be excused from frustrating situations. The principal approved her use of a chair throughout the day, agreed to communicate any performance issues, afforded her the continued use of memory aids, and granted the requested extra time to complete tasks. The principal told Smithson that first period planning periods could not be guaranteed due to the needs of the students, the needs of the school, and the complexity of the School Master Schedule. Again, Smithson was able to carry out her duties to her employer's satisfaction during this time period.

In 2016, a new principal, Marc Villareal, was hired. In 2017, the school changed its Master Schedule and assigned Smithson to teach five sections of the same subject, biology.

Smithson asked for an accommodation of having her regular schedule of varied classes because of a need to avoid boring situations, which worsened her affective disorder and her headaches. Villareal offered to switch one or two sections of biology with human anatomy and physiology, but Smithson declined that offer.

In 2018, Smithson requested as an additional accommodation certain software that would allow her to monitor students conducting research without leaving her desk, and to assist students from her desk as well when they needed help. She also requested a tablet computer for this same purpose. She stated that she needed this technology because she could no longer move about the classroom without getting dizzy. Principal Villareal forwarded this request to Laura Tronge, the new Diversity/Disability Coordinator Program Manager for DODEA in Europe. He then attempted to set up a meeting with Tronge and Smithson in order to update the school's records for her reasonable accommodation requests. Smithson questioned whether such a meeting was necessary because she was simply updating already granted accommodations. She noted that her condition had worsened since she had first requested accommodations. Tronge responded that because Smithson's medical condition had changed over time, the school was obligated to periodically review previous accommodations under the Rehabilitation Act. After Tronge met with Smithson, Tronge asked Smithson to provide medical documentation to support her requests.

Smithson submitted a doctor's letter indicating that she required a flexible duty reporting time that included as much as a two-hour delay in starting her day, admittedly much more than the fifteen minutes that Smithson initially

requested in 2010. The doctor also indicated Smithson's con-
tinued need to avoid classroom instruction during the first pe-
riod of the day so that she could work from home during that
time in a dark area in order to alleviate the effects of her med-
ical conditions and drug side-effects. The doctor also recom-
mended that Smithson be allowed to remain seated during
classes due to the severity of her migraines, vertigo, and im-
balance. He recommended prompt communication of perfor-
mance issues, extra time to complete certain tasks, and that
she be allowed to continue a course load that was familiar and
recently instructed. Finally, the doctor recommended assis-
tive software and hardware that would allow Smithson to re-
main seated at her desk while instructing students.

Villareal issued a response to Smithson that covered six
areas of requested accommodations. R. 35-11. Smithson was
approved to use a chair while teaching unless it was deter-
mined to be an undue hardship for the employee to perform
the essential functions of the position. In response to Smith-
son's need for performance feedback, Villareal committed to
providing feedback quarterly for the upcoming school year.
As for her request for extra time performing certain tasks, Vil-
lareal offered to be flexible but indicated that this would be
granted on a "project/product by project/product deadline."
He added that this was not a denial and that "we will do our
best." In response to her request to teach only particular clas-
ses, Villareal indicated that the school would do its best to
give her the assignments that she requested but that this out-
come could not be guaranteed based on the school's needs
and teacher accreditations. Smithson's technology requests
would be provided if DODEA had the products available.
Two of the items she requested were not currently available,

but Villareal pledged to look for alternatives that would serve the same functions.

That left Smithson's request for a flexible duty reporting time of up to two hours, the main point of contention in this lawsuit. Villareal's response to this request was, "The employee is approved to use sick leave for any absence from school up to two hours, barring any undue hardship to the school schedule." R. 35-11, at 1. A few weeks after receiving Principal Villareal's response to her requests, Smithson sent him an email indicating that she would be late every day:

> Each morning, I will report to work after 0800hrs, but before my first instructional section. This has been approved by administration; and I have submitted the leave forms in advance.

> If there becomes a morning when I cannot report on time for my class, I will contact the main office before 0800hrs in order to have a substitute assigned for that day. The location of my emergency substitute plans will be provided at that time. Please let me know if you have questions or concerns.

R. 35-15. Smithson explained in her deposition that she already knew that she would be sick every day because her medical condition was not going to change, and that she had difficulty with her intracranial pressure every day. R. 35-1, at 248, 250. Smithson had never been required to use sick leave for her early morning delays in getting to the school. Moreover, the school had a policy of requiring that sick leave be taken in half-day increments because a teacher's absence

generally required the school to retain a substitute. This meant that Smithson would be required to use half-day increments of sick leave even if she was delayed in arriving by only two hours.

Principal Villareal was concerned that Smithson had indicated that she would never be able to arrive at the school by 8 a.m. because of her medical conditions. R. 35-16. He explained to her that it was essential for her, as a science teacher, to perform her duties during the established times of the school day (8:00 am to 3:30 p.m.) when she was on duty. He remarked that even when beginning the day with a planning period, teachers sometimes need to be physically present in the school to receive training, collaborate with colleagues, or otherwise conduct *ad hoc* instruction from the very beginning of the day. R. 35-16. He rejected Smithson's request to shift her work hours because, "[t]he duty times of the school day are fixed and directly connected to our responsibilities to instruct and supervise students within the established school day." R. 35-18. Smithson worked under these conditions, using sick leave as needed for a period of time.

Ultimately, the COVID pandemic resolved the situation in a manner acceptable to both DODEA and Smithson. DODEA suddenly had a great need for virtual instruction because of the pandemic and Smithson was hired to work from home, full-time, as a teacher in DODEA's Virtual School in August 2020. She apparently continued to do so as of the time the appellate briefs were filed. Smithson sued under the Rehabilitation Act for disability discrimination and for failure to accommodate for the period of time that she was required to use a half-day of sick leave whenever she arrived late at the school. The district court granted summary judgment in favor of

DODEA on Smithson's claims. For both the accommodation
and the discrimination claims, the court found that in-person
attendance was an essential function of Smithson's position
and that her need to miss up to two hours each morning
demonstrated that she could not perform this essential func-
tion of her job. She appeals.

## II.

On appeal, Smithson argues that the district court erred in
finding that she was unable to fulfill the essential functions of
her position as a teacher, with or without an accommodation,
because of her need to delay her arrival at school. We review
the district court's grant of summary judgment *de novo*, exam-
ining the record in the light most favorable to the nonmovant
and construing all reasonable inferences from the evidence in
her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255
(1986); *Tolliver v. City of Chicago*, 820 F.3d 237, 241 (7th Cir.
2016). Summary judgment is appropriate when there are no
genuine disputes of material fact and the movant is entitled
to judgment as a matter of law. Fed.R.Civ.P. 56(a); *Tolliver*, 820
F.3d at 241.

The standards for the Rehabilitation Act are the same as
those employed for the Americans with Disabilities Act of
1990, 42 U.S.C. § 12101, *et seq.*, and so we rely on case law ap-
plicable to either statute. *McCray v. Wilkie*, 966 F.3d 616, 621
(7th Cir. 2020); *Gratzl v. Office of Chief Judges of the 12th, 18th,
19th & 22nd Judicial Circuits*, 601 F.3d 674, 678 n.2 (7th Cir.
2010). To make out a claim for failure to accommodate under
the Rehabilitation Act, Smithson must demonstrate that:
(1) she is a qualified individual with a disability; (2) the de-
fendant was aware of her disability; and (3) the defendant
failed to reasonably accommodate her disability. *Youngman v.*

*Peoria County*, 947 F.3d 1037, 1042 (7th Cir. 2020); *Gratzl*, 601 F.3d at 678; *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005).

We begin with whether Smithson is a qualified individual with a disability. "In determining whether an employee is a 'qualified individual,' we first consider whether the individual satisfies the prerequisites for the position and then turn to the question of whether the individual can perform the essential functions of the job with or without reasonable accommodation." *Rodrigo v. Carle Foundation Hospital*, 879 F.3d 236, 241–42 (7th Cir. 2018). That, in turn, requires that we consider whether a particular duty is an essential function of the job. "In determining whether a particular duty is an essential function, we consider the employer's judgment, the employee's written job description, the amount of time the employee spends performing that function, the consequences of not requiring the employee to perform the function, and the experiences of past and current workers." *Rodrigo*, 879 F.3d at 242. The employer's judgment is considered an important factor, but it is not determinative, and we also look to evidence of the employer's actual practices in the workplace. *Id.*

DODEA does not dispute that Smithson has a disability and concedes that she possesses the necessary skills and certifications for her position. Indeed, Principal Villareal testified that "[w]hen she's here and she's well, she's a fully successful teacher. She's a very good teacher." DODEA nevertheless asserted that she is not a qualified individual because she cannot perform some of the essential functions of her job with or without an accommodation. In particular, she is sometimes entirely absent from school due to her medical conditions, and she indicated that she would be regularly absent during

early periods of the day when training, teacher collaboration, interactions with parents, *ad hoc* instruction, and other necessary activities take place. As relayed in her doctor's request and as noted by Smithson herself, she expected to be up to two hours late **every** day because her condition had deteriorated, and she was sick virtually every morning.

We have repeatedly held that an employer may require attendance at the job site as an essential requirement of the job. *Whitaker v. Wisconsin Dept. of Health Services*, 849 F.3d 681, 684-85 (7th Cir. 2017) ("For purposes of the Americans with Disabilities Act and the Rehabilitation Act, regular attendance is an essential function of many jobs."); *Basden v. Professional Transp., Inc.*, 714 F.3d 1034, 1037 (7th Cir. 2013) ("An employer is generally permitted to treat regular attendance as an essential job requirement and need not accommodate erratic or unreliable attendance."); *E.E.O.C. v. Yellow Freight System, Inc.*, 253 F.3d 943, 948–49 (7th Cir. 2001) (same; collecting cases). In the context of teaching at a school where the students attend in person during fixed hours of the day, we have held that an employer may require attendance as an essential job requirement. *Nowak v. St. Rita High School*, 142 F.3d 999, 1003–04 (7th Cir. 1998). Such was the case here, and DODEA generally required regular teacher attendance during the hours that school was in session for the students. Smithson conceded that attendance during school hours is an essential function of being a teacher. She cites no evidence to the contrary.

Nevertheless, Smithson counters that early morning attendance was not essential, or so a jury could conclude, because the school had allowed her to arrive late for a number of years. She characterized this as the "same" accommodation that she had used for years with no problem. True, the school

initially approved her plan to infrequently arrive fifteen minutes late and make up that time at the end of the day. Over the years, however, that amount of time increased as Smithson asked to have her planning period at the beginning of the day, a task she believed she could carry out at home while she recovered from the regular effects of her conditions and the medications that she took to control them. The school accommodated this request but could not guarantee that Smithson would be able to continue to have her first period for planning purposes due to the needs of the school and students. The school managed to continue this accommodation for several years, until Smithson asked for a delayed start time of up to two hours each day. A frequent two-hour delay at the beginning of the school day is objectively not the same as an infrequent fifteen-minute delay.

Even with the significantly more expansive request to regularly arrive two hours late, the school granted Smithson's accommodation, but directed her to use sick leave to cover those hours. School policy required that sick leave be used in minimum increments of a half-day because the school needed to hire substitutes for teachers who were absent during class times. Smithson objects that this is no accommodation at all because every employee is granted sick leave and forcing her to use sick leave was a penalty for her disabilities.

We disagree. At this point, Smithson was asking to spend up to a quarter of the workday at home. She appears to have wanted to continue with a first period planning period at home, although she could not perform some of the planning period activities such as collaborating with other teachers, attending training sessions or meetings, and meeting with parents when not at the school. Whether she intended or was able

to work from home in the second hour is unclear, and because she has the burden of proof in demonstrating that she was a qualified individual, the absence of evidence on whether she could perform essential tasks from home in the second hour weighs against her claim.

In any case, her employer is allowed to designate in-person attendance as an essential function, she has conceded that in-person attendance was necessary for teachers, and she was regularly unable to attend for up to a quarter of the designated school day, a significant part of the workday. That means that she is not a qualified individual as a matter of law.

That DODEA accommodated her with a late start time for a number of years is not determinative for two reasons. First, her initial request for a delayed start time was limited (fifteen minutes by her own estimate) and infrequent. Over time, as her condition worsened, the delay increased to fill the first hour planning period, and in the end grew to double that amount. Although the school might have been able to accommodate some minor delay in arrival on an infrequent basis, or even an hour of delay on a regular basis in which she worked from home conducting planning period activities, a delay in arrival that consumes twenty-five percent of the school day on a regular basis is not a reasonable accommodation as a matter of law. Second, that her employer accommodated a limited measure of delayed arrival in the morning (as circumstances permitted) for a number of years does not mean that physical attendance at school was not essential. In the absence of independent evidence that morning attendance was non-essential, we will not construe the delayed start time or the allowance of the first period planning period as proof that attendance was not essential because it would punish the

employer for going beyond the law's requirements. *Vande Zande v. State of Wisconsin Department of Administration*, 44 F.3d 538, 545 (7th Cir. 1995) (if an employer goes further than the law requires in accommodating a disabled person, it must not be punished for its generosity by being deemed to have conceded the reasonableness of a far-reaching accommodation); *Basith v. Cook County*, 241 F.3d 919, 930 (7th Cir. 2001) (same).

Finally, that her employer granted her the requested two-hour delay in arrival on the condition that she employ sick leave is neither evidence that attendance is not essential nor a failure to accommodate. The employer indicated that it would fill her position with a substitute on the days that she required a longer delay in arriving, demonstrating that a teacher needed to be physically present during that time. And requiring an employee to use sick leave for an absence due to illness for a job where in-person attendance is required is not prohibited under the Rehabilitation Act or the ADA. The very purpose of sick leave is to accommodate employees who are unable to work due to illness. Smithson wished to be absent from school due to illness without using sick leave. We have held in the past that unlimited sick time, without penalty, is not a reasonable accommodation as a matter of law when in-person attendance is essential to the job. *See Wagonner v. Olin*, 169 F.3d 481, 484–85 (7th Cir. 1999); *Vande Zande*, 44 F.3d at 545. DODEA has produced evidence that regular in-person attendance in the early hours of the school day was essential to the job; Smithson conceded as much; and no evidence in the record demonstrates otherwise. Even if we assume that in-person attendance during the **first** period planning hour is not essential, Smithson has not explained how she could

fulfill her essential teaching duties during her **second** hour of absence.

In the past, we have held that working at home is not a reasonable accommodation as a general matter. *Kinney v. St. Mary's Health, Inc.*, 76 F.4th 635, 644 (7th Cir. 2023) (listing cases spanning from 1995 through 2019 holding that, as a general matter, working from home is not a reasonable accommodation). But as we recently noted, the COVID pandemic led to developments in work-from-home technologies that change the calculus for this assessment. *Id*. In the post-COVID pandemic economy and with the advent of new technologies making working from home more feasible, we must now assess whether in-person attendance is essential on a context-specific basis. At the time that Smithson sought to work from home, these technologies were not yet in wide use, and teaching was almost always conducted in person, as it was at the school where Smithson worked. DODEA has now accommodated Smithson by placing her in a position where she teaches from home at a virtual school. But at a time when these technologies were not in wide use, and in the context of teaching at a school where both students and teachers regularly attended in person, DODEA adequately accommodated Smithson's needs by granting her delayed arrivals through the use of sick leave, which allowed DODEA to cover her absences with substitute teachers.

The same analysis applies to her claim for disability discrimination. As with her accommodation claim, she must show that she is a qualified individual with a disability. Because she cannot show that she could fulfill the essential requirement of in-person attendance on a regular basis in the first two hours of the school day, with or without a reasonable

accommodation, her discrimination claim fails as a matter of law.

AFFIRMED.